IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., <br><br>  Plaintiff, <br><br> v. <br><br> CAL CITY POST NO. 476, <br> THE AMERICAN LEGION, et al., <br><br>  Defendant. | Case No.: 1:10-cv-00762 AWI JLT <br><br> FINDINGS AND RECOMMENDATION DENYING PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT <br><br> (Docs. 13, 14) |

J & J Sports Productions, Inc., ("Plaintiff") seeks the entry of default judgment against Defendant California City Post No. 476, The American Legion, Department of California, doing business as Cal City American Legion, Post 476 and also known as Harry V. Bailey, Sr. American Legion Post 476. (Docs. 13, 14) Defendant has not opposed Plaintiff's application. The Court reviewed Plaintiff's motion and supporting documents and determined that this matter is suitable for decision without oral argument pursuant to the Local Rules.

I.  **Procedural History**

On April 30, 2010, Plaintiff filed its complaint against Defendant, alleging violations of 47 U.S.C. § 605, *et seq.*; 47 U.S.C. § 533, et seq.; and the California Business and Professions Code § 17200, *et seq*. In addition, Plaintiff alleges Defendant is liable for wrongful conversion of property,

arising under California State law. (Doc. 1 at 3-7)  Plaintiff claims to have possessed the exclusive rights to the nationwide commercial distribution of "The Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" ("the Program"), televised on May 2, 2009. Id. at 3.  All claims are based upon Defendant's alleged unlawful interception and broadcast of the Program.

Defendant was properly served with the complaint on July 23, 2010, and failed to respond within the time prescribed by the Federal Rules of Civil Procedure.  Upon application of Plaintiff, and pursuant to Fed.R.Civ.P. 55(a), default was entered against Defendant on August 19, 2010. (Doc. 12)  Plaintiff filed the application for default judgment now before the Court on September 8, 2010. (Docs. 13, 14)  Despite being served with all documents from the complaint to Plaintiff's request for entry of default and motion for default judgment, Defendant has failed to participate in this action.

## II.  Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern applications to the Court for issuance of default judgment.  Where a default has been entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed.R.Civ.P. 55(a)-(b).  Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. Pope v. United States, 323 U.S. 1, 22 (1944); see also Geddes v. United Financial Group, 559 F.2d 557, 560 (9th Cir. 1977).

Granting or denying a motion for default judgment is within the discretion of the Court. Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir. 1980).  The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. Pepsico, Inc. v. Cal. Sec. Cans, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), accord Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986).  The Ninth Circuit opined,

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6)

1  whether the default was due to excusable neglect, and (7) the strong policy underlying
2  the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. Id. at 1472.

### III.  Discussion and Application

Plaintiff alleges that by contract, it was granted exclusive domestic commercial distribution rights to the Program, and pursuant to that contract entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 3). Without purchasing the proper sublicense, Defendant broadcasted the Program in its establishment, which had a capacity of approximately 30-40 people. (Id. at 4; Doc. 13, Ex. 1 at 2). The cost of a commercial sublicense for an establishment of that capacity would have been $1,600.00. (Doc. 15 at 3).

In its complaint, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605, statutory damages of $ 60,000 for the violation of 47 U.S.C. § 553, and for recovery of all costs and reasonable attorney fees under both statutes. In addition, Plaintiff seeks compensatory and punitive damages for Defendant's tortuous conversion of Plaintiff's property. Finally, Plaintiff requested restitution, declaratory relief, and injunctive relief for Defendant's violation of the California Business and Professions Code. (Doc. 1 at 9-10) However, Plaintiff only requested damages for the violation of 47 U.S.C. § 605 and conversion in its application for default judgment. (Doc. 13) Therefore, the Court will only address these claims against Defendant.

The Court acknowledges that Plaintiff has no other alternative by which to recover damages suffered as a result of Defendant's piracy. See J & J Sports Prods. v. Rodriguez, 2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). However, the Court has reservations regarding the merits of Plaintiff's claims and the sufficiency of the complaint. Given the kinship of these factors, the merits of Plaintiff's claims and the complaint are considered together. See J & J Sports Prods. v. Hernandez, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the

plaintiff may recover." <u>Pepsico, Inc.</u>, 238 F.Supp.2d at 1175, <u>citing</u> <u>Kleopping v. Fireman's Fund</u>, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996).

      A.   Violation of 47 U.S.C. § 605

The Federal Communications Act of 1934 ("Communications Act"), 47 U.S.C. § 605, "prohibits the unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." <u>Hernandez</u>, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3. In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). Plaintiff's Communications Act claim requires the Plaintiff to prove that it was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A). A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6).

In the complaint, Plaintiff asserted that it (J & J Sports Productions) was granted the exclusive domestic commercial distribution rights to the Program. Though Plaintiff claimed to be the official licensor, Plaintiff provided evidence that contradicted this claim. The rate sheet for the Program, attached as Exhibit 1 to the affidavit of Joseph Gagliardi, president of J & J Sports (Doc. 15), states:

> All commercial locations that have been licensed to carry this event must have a valid license agreement from the OFFICIAL CLOSED-CIRCUIT PROVIDER, G&G Closed Circuit Events, Inc. There is NO OTHER LEGAL LICENSOR. Any location that has not been licensed by this provider will be considered a PIRATE and TREATED ACCORDINGLY.

(Doc. 15, Ex. 1) Moreover, the information for questions regarding location packages names G & G Closed Circuit Events as the contact. <u>Id.</u> Thus, Plaintiff contradicted its own pleading. According to the evidence, *there is no other legal licensor* than G & G Closed Circuit Events and Plaintiff could not have been a legal licensor and possessed the exclusive distribution rights. Notably, Plaintiff has not made any factual allegations as to a connection between Plaintiff and G & G Closed Circuit Events. Therefore, the Court declines to assume the allegations in the Complaint as true regarding Plaintiff's possession of commercial distribution rights in the face of evidence—provided

by Plaintiff—that states otherwise. See J & J Sports Prods. v. Phelan, 2009 U.S. Dist. LEXIS 103626, at *34 (E.D. Cal. Nov. 5, 2009).  Since Plaintiff has not established that it has the distribution rights, it has not met the burden of establishing that it is the party aggrieved, and has not stated a claim upon which it could recover under 47 U.S.C. § 605.

### B.  Conversion

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages."  G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc., 958 F.2d 896, 906 (9th Cir. 1992); see also Greka Integrated, Inc. v. Lowrey, 133 Cal.App.4th 1572, 1581, 35 Ca. Rptr. 3d 684 (2005) ("elements of a conversion are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages").  Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion."  G& G Closed Circuit Events, LLC v. Saddeldin, 2010 U.S. Dist. LEXIS 77585, at *10, citing Don King Prods./Kingsvision v. Lovato, 911 F.Supp. 429, 423 (N.D. Ca. 1995).  Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

As addressed above, Plaintiff has not demonstrated that it had the right to license broadcasting of the Program.  See Phelan, 2009 U.S. Dist. LEXIS 103626, at *34 (As evidence of distribution rights, the plaintiff provided a contract that on its face granted Plaintiff the exclusive right to license Golden Boy's telecast of a boxing match).  Since the evidence demonstrates that G & G Closed Circuit Events had the licensing rights and not Plaintiff, the elements of conversion are not met.

### IV. Findings and Recommendations

Several of the Eitel factors weigh against granting default judgment.  Plaintiff has provided evidence that another organization held the distribution rights, and therefore Plaintiff has not stated a claim upon which relief can be granted when the Court examines the merits of Plaintiff's claim and

sufficiency of the complaint. In addition, there arises the possibility of dispute concerning a material fact—whether Plaintiff held the claimed proprietary rights in distribution of the Program.

Given the issues discussed above, and the strong policy favoring decisions on the merits rather than the issuance of default judgment, the Court believes that it is acting within its discretion in denying to enter default judgment. See Aldabe, 616 F.2d at 1092. Therefore, the Court **RECOMMENDS** that Plaintiff's request for entry of default judgment is **DENIED**.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 26, 2010**                              /s/ **Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE